United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH AMBUHL,<br><br>  Plaintiff,<br><br>v.<br><br>SAP LABS, LLC, a corporation, DOE ONE through ONE HUNDRED, inclusive,<br><br>  Defendants. | Case No. C-13-04866-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re Docket No. 14] |

In this employment dispute, defendant SAP Labs moves to dismiss Elizabeth Ambuhl's claims, which are based on allegedly unlawful harassment and discrimination. SAP argues that most of Ambuhl's claims are untimely and that the remaining cause of action fails to state a claim. For the reasons explained below, the court denies the motion as to timeliness, but grants the motion to dismiss the emotional distress claim.

## I. BACKGROUND

Ambuhl started working at SAP in 1995. Compl. ¶ 4. In 1998, Ambuhl was diagnosed with fibromyalgia. *Id.* Over the next ten years, she received some accommodations for her medical condition from SAP including reduced travel demands and being allowed to work from home when needed. *Id.* In 2008, Ambuhl was assigned to a new supervisor, Alice Heidinger. Heidinger

1   allegedly began a "campaign of harassment" and stopped allowing Ambuhl any accommodations.
2   *Id.* at ¶ 5. Ambuhl alleges that Heidinger demanded that Ambuhl "remain at her desk for extended
3   periods of time and stay at the office the entire work day." *Id.* Heidinger allegedly micromanaged
4   Ambuhl and "criticized her work without justification." *Id.* Ambuhl claims that she became ill
5   because of her mistreatment and lack of accommodations and, as a result, she had to go on disability
6   leave after the human resources department did not address her complaints. *Id.* at ¶¶ 5-6.

7   Ambuhl eventually returned to work, but SAP allegedly refused to accommodate her
8   disability and quizzed her "in minute detail about her illness." *Id.* at ¶ 7. SAP also allegedly
9   demanded a statement from a physician. *Id.* Ambuhl again went on disability leave, which she
10  claims was a result of the lack of accommodations. *Id.* When she returned to work, SAP allegedly
11  required that she complete a detailed medical questionnaire and release her medical records to SAP.
12  *Id.* at ¶ 8.

13  In 2011, the parties reached a partial resolution to the dispute, and Ambuhl returned to work
14  with accommodations. *Id.* at ¶ 13. While they were negotiating a settlement, the parties agreed to
15  toll the statute of limitations as to Ambuhl's possible claims. *Id.* at ¶ 12. After failing to reach an
16  agreement as to the remaining issues, Ambuhl sued in state court, and then SAP removed the case to
17  federal court based on diversity jurisdiction. *See* Dkt. No. 1 (SAP is a citizen of Delaware and
18  Pennsylvania while Ambuhl is a citizen of California). SAP now brings the current motion to
19  dismiss.

## II.  ANALYSIS

21  SAP moves to dismiss Ambuhl's first through eighth cause of action based on the statute of
22  limitations. It also moves to dismiss Ambuhl's ninth cause of action for intentional infliction of
23  emotional distress for failure to state claim.

24  **A.  Statute of Limitations**

25  SAP argues that the statute of limitations bars all of Ambuhl's claims. The parties agreed to
26  toll the statute of limitations until "thirty (30) days from the date either party declares in writing to
27  the opposing party . . . that the matter cannot be settled." Riechert Decl. Ex. A, Dkt. No. 16. SAP
28  argues that a June 28, 2013 email from Ambuhl's counsel to SAP ended the tolling, and because

1  Ambuhl did not file her complaint until August 26, 2013, her complaint is untimely. Although the
2  June 28, 2013 email implies that negotiations were almost at an end, the email states that Ambuhl
3  would consider another settlement offer if SAP "wants to make a good faith offer to resolve the
4  remaining issues." *Id.* at Ex. B. SAP never responded to this email indicating whether they would
5  be making another offer. The last email appears to have left open the possibility of continued
6  negotiations. Although a jury might find otherwise, on either a motion to dismiss or summary
7  judgment standard, the court cannot find that Ambuhl's June 28, 2013 email was a declaration "in
8  writing to [SAP] that the matter cannot be settled." *Id.* at Ex. A.

9  SAP also moves to strike portions of Ambuhl's complaint arguing they are irrelevant
10 because the claims were untimely. The court denies this motion for the same reasons.

### B. Intentional Infliction of Emotional Distress

12  SAP also moves to dismiss Ambuhl's ninth cause of action for intentional infliction of
13  emotional distress ("IIED"). IIED requires "(1) extreme and outrageous conduct by the defendant
14  with the intention of causing, or reckless disregard of the probability of causing, emotional distress;
15  (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were
16  actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65
17  Cal. App. 4th 488, 494 (1998). Extreme and outrageous conduct is conduct "so outrageous in
18  character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
19  regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 496 (quoting
20  Restatement (Second) of Torts § 46, com. d).

21  In *Schneider v. TRW*, the Ninth Circuit found that a supervisor's yelling and screaming while
22  criticizing an employee's performance was not outrageous behavior, even when the supervisor
23  threatened to throw the employee out of the department and made threatening gestures. 938 F.2d
24  986, 992 (9th Cir. 1991) (granting summary judgment for the defendant). The court found that
25  "rude" or "insensitive" remarks were not enough to support an IIED claim. *Id.* SAP's behavior, as
26  alleged by Ambuhl is not even as extreme as *Schneider*. Although unjustified criticism of her
27  performance and consistent refusal to give her accommodations may be wrong, the behavior does
28  not go beyond all possible bounds of decency. Further, personnel management activity, even

improperly motivated and poorly considered activity, is generally not actionable as intentional infliction of emotional distress. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996); *Zhang v. Walgreen Co.*, No. C 09-05921 JSW, 2010 WL 4174635, at *3 (N.D. Cal. Oct. 20, 2010) (listing cases following *Janken*). *But see*, *Jelincic v. Xerox Corp.*, No. C-04-2930 (EMC), 2004 WL 2217643, at *6 (N.D. Cal. Oct. 1, 2004) (finding *Janken* only limited the liability of individual supervisors for personnel management decisions, but not employers).

Although, as Ambuhl argues, discrimination and harassment can form the basis of an IIED claim, she needs to allege more than "[t]hreadbare recitals of the elements of a cause of action," or legal conclusions presented as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ambuhl states that she was harassed and discriminated against, but her only statements substantiating these allegations are that: (1) she was not allowed to work from home while other team members were; (2) she was required to remain at her desk during the work day; (3) she was required to provide documentation about her medical condition; and (4) her work was criticized. Compl. ¶¶ 5-8. These allegations are not enough to state a claim for IIED based upon discrimination or harassment.

### III.  ORDER

The court denies SAP's motion to dismiss Ambuhl's first through eighth causes of action, but grants SAP's motion to dismiss Ambuhl's claim for intentional infliction of emotional distress, without prejudice. Ambuhl must file any amended complaint by January 13, 2014.

Dated: December 13, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Judge